UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION  3:23-cv-540-BJB

RICHARD CARTER                                                                                                    PLAINTIFF

v.

BEST SUPPLY OF NASHVILLE, LLC                                                                    DEFENDANTS
    Serve:        Registered Agent Solutions
                    828 Lane Allen Road, Suite 219
                    Lexington, KY 40504

and

PAUL SMITH
    Serve:        Paul Smith
                    563 St. Andrews Road
                    Brandenburg, KY 40108

and

TIM SMALL, IN HIS CAPACITY AS ADMINISTRATOR
AND/OR PLAN SPONSOR OF HEALTH CARE PLAN FOR
BEST SUPPLY OF NASHVILLE, LLC
    Serve:        Registered Agent Solutions
                    828 Lane Allen Road, Suite 219
                    Lexington, KY 40504

## COMPLAINT

Comes Plaintiff, Richard Carter, (hereinafter "Rick"), by and through counsel, and for his Complaint against Defendants, Best Supply of Nashville, LLC (hereinafter "Best Supply"), Paul Smith (hereinafter "Paul"), and Tim Small, in his capacity as administrator and/or plan sponsor of health care plan for Best Supply of Nashville, LLC (hereinafter "Small" and/or "the Sponsor"), states as follows:

1. During the time period pertinent to the acts complained of herein, Rick was a resident of Oldham County, Kentucky and an employee of Best Supply.

2. Defendant Best Supply is a foreign corporation that is licensed to and does transact business in the Commonwealth of Kentucky.

3. Defendant Paul Smith was at all times pertinent to this Complaint a resident of the Commonwealth of Kentucky and an employee of Best Supply and Rick's Supervisor.

4. Defendant Tim Small was at all times pertinent to this Complaint an agent of Best Supply and the Plan Administrator and/or Sponsor for Best Supply's Group Health Insurance Plan that covered Best Supply's employees during the times complained of herein.

5. The events complained of herein occurred in Jefferson County, Kentucky.

6. The United States District Court for the Western District of Kentucky has jurisdiction over this matter as it involves a Federal Question under the Employee Retirement Income Security Act ("ERISA") as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C.A. §§ 1161-69 (hereinafter "the COBRA amendments") and as vested by the United States Congress under 29 U.S.C.A. § 1132(e)(1). [1]

7. Venue is proper in this court as a substantial part of the events giving rise to the claim occurred in Jefferson County, Kentucky

8. Rick was hired initially as an outside sales representative for Best Supply in May of 2021.

9. Rick continued in his position as outside sales representative until Rick's wrongful termination in April of 2022.

---

[1] On October 4, 2022, Plaintiff filed suit in Kentucky state court (Jefferson County Circuit Court, Civil Action No. 22-CI-005136) against Best Supply and Paul Smith alleging wrongful termination, negligent supervision, and violations of Kentucky's Wage and Hour Act. The parties have exchanged extensive written discovery in that matter, and the depositions of Rick Carter, Paul Smith, and Ethan Smith are presently scheduled for December 2023.

10. Rick was hired with the agreement of the following benefits: salary plus commission, monthly travel/vehicle stipend, and full health care coverage benefits.

11. Rick took on the responsibility of supporting Best Supply's existing customers as well as recruiting new customers.

12. After several months of employment, Rick became aware that none of the customer records reflected Rick as the salesperson.

13. In fact, all of the customer records listed Paul as the salesperson.

14. Rick brought the matter to Paul's attention three separate times throughout 2021, as he was concerned that it would appear to the home office that Rick was not recruiting new clients and he would therefore not receive the commissions to which he was entitled.

15. Paul's only response was "Rick, I know who your customers are."

16. Rick believes Paul was improperly splitting Rick's commissions between five (5) other employees at the Louisville location.

17. Rick believes Paul was unethically and illegally skimming and/or stealing Rick's commissions.

18. In March of 2022, Rick gave Paul his two weeks' notice and informed him that he would be notifying the home office that Paul was listing himself as the salesperson for all of Rick's clients.

19. Paul asked Rick not to resign and Paul told Rick that Paul would change the customer assignments to list Rick as the salesperson by the following Monday.

20. Rick agreed.

21. After Paul and Rick's meeting, Paul immediately went to the operations manager and conveyed to the operations manager that commissions were only to be divided at Paul's discretion.

22. In April 2022, Rick and Ethan, Paul's son, who is also an employee of Best Supply, engaged in a verbal disagreement, wherein Ethan expressed concern that Rick would report information concerning Ethan's drug use to the home office.

23. Paul then asked Rick what the disagreement was about.

24. After Rick and Paul discussed the disagreement, Paul sent Rick home for the day.

25. Two days later, Paul called Rick and told him he no longer required Rick's services for outside sales and that he did not need to return to the office.

26. Rick was wrongfully terminated for refusing to participate in Paul's illegal scheme to steal Rick's commissions and to defraud the home office.

27. During his entire employment, Rick was never written up or disciplined for misbehavior.

28. In fact, Paul expressed to Rick multiple times that he was the best outside salesperson he had ever employed.

29. Defendant Best Supply enabled and supported Paul's improper and illegal conduct.

30. Paul was acting in the scope and course of his employment with Defendant Best Supply.

31. Defendants did not terminate Rick for gross misconduct and Rick did not engage in the same while employed by Best Supply.

32. While employed by Best Supply, Rick was a covered employee enrolled in a group health care plan during the year immediately preceding his termination (herein "the plan" or "the group health plan").

33. The group health plan was provided to Best Supply's employees and sponsored and administered by Tim Small.

34. Best Supply is a private employer and not a government entity.

35. Upon information and belief, Best Supply employed greater than or equal to twenty (20) employees on a typical business day during the calendar year preceding Rick's termination.

36. When Rick was terminated, his health care benefits were stopped immediately and he was not provided notice of his option to elect continuation coverage under the plan as required by federal law.

### COUNT I—VIOLATION OF EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) AS AMENDED BY THE CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT (COBRA), 29 U.S.C.A. § 1166 (ALL DEFENDANTS)

37. Rick adopts and reiterates the allegations contained in the foregoing numerical paragraphs.

38. Rick received health coverage benefits from Best Supply while in their employ.

39. Upon his wrongful termination, Rick's health coverage benefits were stopped.

40. Due to the volume of its employment, Best Supply was at all relevant times subject to the provisions of the COBRA Amendments. *See* 29 U.S.C.A. § 1161.

41. 29 U.S.C.A. § 1161 mandates that the plan sponsor of each group health plan shall provide, in accordance with the COBRA Amendments, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

42. Rick was insured under a group health plan sponsored by his employer, Best Supply, as defined by 29 U.S.C.A. § 1167(1) and (2).

43. Rick's termination for reasons other than gross misconduct constituted a qualifying event under 29 U.S.C.A. § 1163(2).

44. Rick is a qualified beneficiary for purposes of 29 U.S.C.A. § 1161 and § 1166 per 29 U.S.C.A. § 1167(3)(B).

45. 29 U.S.C.A. § 1166(a)(2) requires that the employer of an employee under a plan must notify the plan administrator of a qualifying event under § 1163(2) within thirty (30) days of the date of the qualifying event.

46. 29 U.S.C.A. § 1166(a)(4)(A) requires that the administrator shall notify any qualified beneficiary of such beneficiary's rights under ERISA and the COBRA Amendments in the case of a qualified event under § 1163(2).

47. 29 U.S.C.A. § 1132(a)(1)(A) and (c)(1) establish a cause of action where a plan administrator fails to meet the requirements of 29 U.S.C.A. § 1166(a)(4).

48. 29 U.S.C.A. § 1132(c)(1) provide for damages in the amount of up to one hundred dollars ($100.00) per day from the date of such failure.

49. 29 U.S.C.A. § 1132(g)(1) authorizes an award of reasonable attorney's fees and costs.

**WHEREFORE,** Plaintiff, Rick Carter, demands as follows:

1. For joint and several judgment against Defendants for compensatory damages in an amount to be determined at trial;
2. For his attorney's fees;
3. For pre- and/or post-judgment interest;
4. For a trial by jury on all issues so triable;
5. For his costs expended herein; and
6. For any and all other relief to which he may appear entitled.

*/s/* Kyle M. Vaughn
Kyle M. Vaughn
Matthew R. Bastin
VAUGHN PETITT LEGAL GROUP, PLLC
7500 West Highway 146
Pewee Valley, Kentucky 40056
(502) 243-9797
(502) 243-9684 (*fax*)

kvaughn@vplegalgroup.com
mbastin@vplegalgroup.com
COUNSEL FOR PLAINTIFF